IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT DANIEL McNETT, SR.** | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-01200-P |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | § § § § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Robert Daniel McNett, Sr. ("McNett") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In September 2018, McNett applied for SSI, alleging his disability began on May 16, 2016.[1] (Transcript ("Tr.") 14; *see* Tr. 154-162.) After his application was denied initially and on reconsideration, McNett requested a hearing before an administrative law judge ("ALJ"). (Tr. 14; *see* Tr. 89-105.) The ALJ held a hearing on March 18, 2020 and issued a decision on April 14, 2020 denying McNett's applications for benefits. (Tr. 14–

---

[1] In the ALJ's decision, the ALJ erroneously stated that McNett alleged his disability began on September 17, 2018. (Tr. 14.)

1

48.) On October 5, 2020, the Appeals Council denied McNett's request for review, leaving the ALJ's April 14, 2020, decision as the final decision of the Commissioner in McNett's case. (Tr. 1–4.) McNett subsequently filed this civil action seeking review of the ALJ's decision.

## I. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii), (d).[2] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f).

---

[2] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 416.920(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 416.920(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(a)(4)(v).

2

Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* § 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUES

In his brief, McNett presents the following issues:

1. Whether the ALJ's RFC determination as to McNett's manipulative abilities is supported by substantial evidence; and

2. Whether the ALJ erred at Step Five in properly establishing that there were jobs that existed in significant numbers in the national economy that McNett can perform.

(Plaintiff's Brief ("Pl. 's Br.") at 1-9.)

## III. ALJ DECISION

In his April 14, 2020, decision, the ALJ found that McNett had not engaged in any substantial gainful activity since September 18, 2018, the claimant's application date. (Tr. 16.) At Step Two, the ALJ found that McNett suffered from the following "severe" impairments: "chronic obstructive pulmonary disease with decreased diffusion capacity (COPD), multiple sclerosis, bilateral carpal tunnel syndrome, depression, and social anxiety disorder." (Tr. 16.) At Step Three, the ALJ found that McNett did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 17-18.)

As to McNett's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can frequently reach, handle, finger, and feel with the bilateral upper extremities. He can occasionally climb ramps and stairs, and he can have only occasional exposure to dusts, fumes, and other pulmonary irritants. He cannot climb ladders, ropes, or scaffolds, and he cannot work at unprotected heights, around moving mechanical parts, or in driving as part of a job. He can understand, remember, and carryout simple tasks and instructions, and he can have occasional interaction with the public.

(Tr. 19 (emphasis omitted).)

Next, the ALJ concluded that McNett had no past relevant work. (Tr. 22.) However, based upon the testimony of a vocational expert ("VE"), the ALJ found that there were jobs that existed

in significant numbers in the national economy that McNett could perform. (Tr. 23.) Consequently, the ALJ found that McNett was not disabled. (Tr. 24.)

## IV. DISCUSSION

### A. Physical RFC Determination as to Bilateral Extremities

As to his first issue, McNett argues that substantial evidence does not support the ALJ's physical RFC determination as to McNett's manipulative limitations because the ALJ substituted his own medical judgment in making such determination. (Pl.'s Br. at 7.) In support of his claim, McNett argues:

> The ALJ acknowledged that Mr. McNett has reduced strength in the upper extremities and suffers from carpal tunnel syndrome. The ALJ further noted that the State agency medical consultants did not find that manipulative limitations were warranted. However, the ALJ found that the opinions of the medical consultants did not fully account for the evidence showing the EMG results, decreased sensation to the fingers, and decreased range of motion to the shoulders. Accordingly, the ALJ found that additional exertional, postural and manipulative limitations are appropriate.
>
> But the ALJ is not a doctor, nor is he a specialist in physical medicine and rehabilitation. How did the ALJ determine that the evidence demonstrating severe carpal tunnel syndrome, decreased sensation to the fingers, and decreased range of motion to the shoulders warranted limiting Mr. McNett to frequent use of bilateral hands for reaching, handling, fingering and feeling, but did not further restrict his manipulative ability? And as the electrodiagnostic evidence shows moderate left median neuropathy at the wrist but very severe right median neuropathy at the wrist, how did the ALJ determine that the Plaintiff's functional capacity in both hands was equal? The answer is, he guessed.
>
> . . . .
>
> The ALJ referred to no evidence, either medical or non-medical, to establish that Mr. McNett, with moderate carpal tunnel syndrome in the left hand but very severe carpal tunnel syndrome in his dominant right hand, had exactly identical functional ability with each hand. Further, having found that manipulative limitations are warranted, the ALJ referred to no evidence which would establish

5

that the Plaintiff can use either of his hands frequently for reaching, handling, fingering, or feeling.

Courts have found that the ALJ is not qualified to reject all of the medical opinion evidence and review raw medical data to come up with his own opinion as to Plaintiff's work limitations.

. . . .

Accordingly, the ALJ's determination that the Plaintiff can frequently reach, handle, finger, and feel; and his further determination that Mr. McNett's functional ability with his right hand is exactly equal to his functional ability with his left hand, is not supported by substantial evidence.

(Pl. Br. at 4–7 (citations omitted).)

RFC is what an individual can still do despite his limitations.[3] Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

6

work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, the ALJ found, as stated above, that McNett had the physical RFC to perform sedentary work except that McNett, as relevant to this issue, can frequently reach, handle, finger, and feel with his bilateral upper extremities. (Tr. 18.) In making the physical RFC determination relating to McNett's bilateral extremities, the ALJ considered, *inter alia*, the opinions of Michael

Ernest, M.D. ("Dr. Ernest") from an August 14, 2019 electromyography ("EMG"), and the State Agency Medical Consultants ("SAMCs") regarding McNett's physical limitations, as well as other medical evidence in the record, stating:

> The objective medical evidence does not provide strong support for the claimant's allegations of disabling physical . . . impairments. The claimant has some reduced strength in his upper extremities, and suffers from carpal tunnel syndrome. However, he has received limited treatment for those symptoms. . . .
>
> . . . .
>
> Although the evidence documents multiple sclerosis and bilateral carpal tunnel syndrome, it shows effective treatment, independent gait, no loss of vision, and intact motor function (Exhibit 7F, pp. 3, 24, 33). The treatment notes show that the claimant reported headaches and electrical shock to his arms, and they show prescriptions for Tecfidera, Lodine, Ultram, and Lyrica; however, the evidence shows minimal exacerbation, no significant side effects associated with the current treatment regimen, and "significant improvement" with treatment (Exhibit 8F, pp. 8, 46, 49, 52). . . .
>
> . . . Furthermore, physical examinations have shown decreased sensation over digits one through three, decreased range of motion of the shoulders and cervical spine, tremors to the right hand, and four out of five motor function to the bilateral upper extremities; however, they generally show intact ambulation and motor function (Exhibit 8F, pp. 10, 29, 33, 51). For example, examinations generally show unremarkable gait, no loss of balance or coordination, full range of motion, full strength, and full sensation (Exhibits 5F, pp. 9, 11; 6F, p. 1; 7F, pp. 27, 35; 8F, pp. 10-11, 19, 22, 29). Finally, electromyography (EMG) showed "severe" carpal tunnel syndrome on the right and "mild to moderate" carpal tunnel syndrome on the left. However, the treatment recommendation was conservative, in the form of a prescription for bilateral splints and a referral for carpal tunnel injections. The evidence shows no surgical recommendations and indicate that the claimant declined injections (Exhibit 8F, pp. 30, 45, 52, 53).
>
> . . . .
>
> The state agency medical consultants found that the claimant could lift and carry twenty pounds occasionally and ten pounds frequently, could stand and walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday (Exhibits 4A, p. 7; 5A, p. 8). The consultants supported their assessments with citation to the medical evidence of record and brief explanation. While the assessed exertional limitations are consistent with the evidence showing unremarkable gait, full range of motion, generally intact motor function, and unremarkable respiratory sounds, the assessed "light" limitations do not fully

account for the evidence showing mild to severe EMG results, decreased sensation to the fingers, decreased range of motion to the shoulders, and decrease in diffusion capacity. Therefore, I find these opinions somewhat persuasive but find additional exertional, postural, manipulative, and environmental limitations are appropriate.

    Therefore, I find that the combination of COPD, multiple sclerosis, and bilateral carpal tunnel syndrome limits the claimant to performing sedentary work. Due to multiple sclerosis and bilateral carpal syndrome, he can frequently reach, handle, finger, and feel with the bilateral upper extremities. . . .

(Tr. 19-22.)

McNett, citing to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), and other similar cases, argues, in essence, that the ALJ erred when the ALJ made a physical RFC determination regarding McNett's manipulative limitations that was not based on any medical opinion in the record. (Pl.'s Br. at 4-7; Plaintiff's Reply at 3.) McNett claims that the November 28, 2018 and May 15, 2019 opinions of the SAMCs, which found that McNett had no manipulative limitations (Tr. 65, 78), were rendered before McNett had the August 14, 2019 EMG performed by Dr. Earnest. (Pl.'s Br. at 4.)

In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. *Ripley*, 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58. The Fifth Circuit rejected that the injuries substantially supported the ALJ's conclusion because the Court could not determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

In this case, as to the ALJ's physical RFC determination regarding McNett's manipulative limitations, there is no opinion in the record that states the effects of McNett's worsening carpal tunnel syndrome on his ability to work. The SAMCs' opinions, which the ALJ finds "somewhat persuasive," found that McNett had light limitations and that he could lift and carry twenty pounds occasionally and ten pounds frequently. (Tr. 22.)  However, the ALJ found that the SAMCs' opinions could not account for McNett's more recent EMG results because such test was conducted after the opinions were written. (*Id.*) In formulating the physical RFC determination, the ALJ appears to have relied on his own lay opinion in an attempt to acknowledge that McNett's carpal tunnel syndrome had worsened.

*Ripley*, however, expressly prohibits the ALJ from independently deciding the effects of Plaintiff's impairments on his ability to work. "[T]he ALJ may not play doctor and provide his own opinion as to [McNett's] limitations, especially when the opinion is unsupported by evidence in the record." *LaGrone v. Colvin*, No. 4:12-CV-792-Y, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 22, 2013). While there is medical evidence in the record indicating McNett's carpal tunnel syndrome had worsened after the SAMCs' opinions were made, the evidence does not reference the effects these conditions had on McNett's ability to work. *See Branch v. Saul*, No. 3:19-CV-6-BN, 2020 WL 1529001, at *4-5 (N.D. Tex. Mar. 31, 2020). Consequently, the Court concludes that the Commissioner's final decision is not supported by substantial evidence because the ALJ made the physical RFC assessment regarding McNett's manipulative limitations without a medical opinion addressing the effects of Plaintiff's worsening physical impairments on his ability to work. *Id.* at 5.

However, "[p]rocedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays*

*v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). When an ALJ commits a *Ripley* error, remand "is appropriate only if [Plaintiff] shows that he was prejudiced." *Ripley*, 67 F.3d at 557. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 558, n.22. On this record, such prejudice has been established, and remand is required.

## B. Existence of Work in Significant Numbers

In his brief, McNett also argues that the ALJ, at Step Five, erred in establishing that there were jobs that existed in significant numbers in the national economy that McNett could perform. (Pl.'s Br. at 7-9.) Specifically, McNett states:

> At step 5 of the sequential evaluation of disability, the burden shifts to the Acting Commissioner to establish the existence of work, in significant numbers, which the claimant can perform. The ALJ identified the jobs of lens inserter, assembler, and cutter and paster, as job which exist in significant numbers and are within the Plaintiff's RFC. This determination is an error.
>
> More than 10 years ago, the Commissioner published the Occupational and Medical-Vocational Claims Review Study [("Review Study")] (see attached exhibit). The job identified by the ALJ as cutter and paster, is identified by the Dictionary of Occupational Titles [("DOT")] as cutter and paster of press clippings (DOT #249.587-014). The Acting Commissioner's claims review study indicated that the job cutter and paster of press clippings is among those jobs which may be obsolete. "It is doubtful that these jobs, as described in the DOT, currently exist in significant numbers in our economy."
>
> The Acting Commissioner has acknowledged that there is no data presently existing that shows the number of jobs available in a particular DOT category. Further, job incidence data is currently organized according to the occupational codes used by the Census Bureau and developed by the Bureau of Labor Statistics for use by Federal statistical agencies. These are known as the Standard Occupational Classification (SOC) codes.
>
> As pointed out to the Appeals Council, the jobs of lens inserter and assembler, identified by the VE and relied upon by the ALJ, are now classified under the Standard Occupational Classification ("SOC") code of 51-9199 (Production Workers, All Other). The Acting Commissioner has recognized the

11

>Occupational Outlook Handbook, published by the Bureau of Labor Statistics, as a reliable source of vocational information. The Occupational Outlook Handbook provides that jobs in the category of production workers [sic], all others have a typical entry-level education requirement of high school diploma or equivalent. As noted above, Mr. McNett does not have a high school diploma. He dropped out of alternative school in the 11th grade, after getting into a fight with a principal. He testified that he attempted to obtain a high school equivalency diploma but failed to do so. Thus, the Plaintiff lacks the typical entry-level educational requirement for jobs in this category. There is no evidence which would establish the number of lens inserter jobs or assembler jobs which may exist in the national economy for an individual who does not possess the typical entry-level educational requirement for such positions. Further, in view of the fact that evidence presented to the Appeals Council establishes that there are only 152 lens inserter jobs in the national economy and only 27 assembler jobs in the national economy, one can surmise that the number of jobs which would be possible for an individual lacking the typical entry-level educational requirements is quite small.
>
>Accordingly, the Acting Commissioner has failed to establish the existence of work in significant numbers which the Plaintiff can perform.

(Pl.'s Br. at 7-9 (citations omitted).)

At Step Five, the Commissioner "must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). When the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The ALJ may consult various sources of evidence, including VEs and the DOT, to determine alternative and available work that the claimant can perform. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009). SSR 00-4p requires the ALJ to identify any apparent conflicts that exist between the VE's testimony and the DOT by asking the VE whether such an inconsistency exists. *See* SSR 00-4p,

2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations omitted).

The Fifth Circuit has held that a determination of disability will not be upheld when it is based solely on the DOT job description, rather than upon other evidence such as a VE's testimony. *Carey*, 230 F.3d at 145. It has also recognized that the DOT does not purport to include every specific skill or qualification for a particular job, which is why "the value of a [VE] is that that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* at 145 (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). Additionally, "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey*, 230 F.3d at 145.

Here, the ALJ posed the following hypothetical question to the VE, which included all of the limitations he found in his RFC determination:

> For the first hypothetical, I'd like you to assume an individual of claimant's age and education with no past relevant work. Further assume the individual is limited to work at the sedentary exertional level; limited to frequent reaching, handling, fingering, and feeling bilaterally; limited to occasional climbing of ramps or stairs; also occasional exposure to dust, fumes, or similar pulmonary irritants; precluded climbing ladders, ropes, and scaffolding, working at unprotected heights, around moving mechanical parts, and driving as part of the job; limited to understanding, remembering, and carrying out simple tasks and instructions; and limited to occasional interaction with the public.

(Tr. 46.) Basing his testimony on the DOT, the VE testified that such a person would be qualified to be a lens inserter (DOT 713.687-026), assembler (DOT 713.687-018), and cutter and paster (DOT 249.587-014). (Tr. 46.) Each of the identified jobs are listed as sedentary with a Specific Vocational Preparation ("SVP") of two. *Id.* The ALJ then asked the VE whether the VE's testimony was consistent with the DOT and the VE replied "yes." McNett's attorney had an

opportunity to object to the VE's testimony or cross-examine him further regarding any conflicts between his testimony and the DOT, but McNett's attorney chose not to do so. (Tr. 47.)

As set forth above, McNett claims that the VE's testimony that the ALJ relied on at Step Five conflicts with the Review Study and the Occupational Outlook Handbook ("OOH"). However, because the undersigned is recommending that the case be reversed and remanded so that the ALJ can reevaluate his RFC determination, the Court need not consider McNett's Step Five arguments. Instead, the ALJ, upon remand, should reevaluate his decision at Step Five based upon the reevaluation of the ALJ's RFC determination.[5]

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings, conclusions, and recommendation.

---

[5] The Court notes that numerous district courts, including at least one in this district, have discussed the issue of if and how an ALJ is to resolve a conflict in the Review Study and jobs listed in the DOT. *See Hardine v. Comm'r of Soc. Sec.*, No. 4:19-CV-147-DAS, 2021 WL 1098483, at *1 (N.D. Miss. Feb. 26, 2021) (stating that, while the Court agrees that it may not consider evidence outside the record, such as the Review Study, "the job of addresser is obsolete, and the court does not need to rely on outside studies to make that determination."); *see also Sigler v. Comm'r, Soc. Sec. Admin.*, No. 19-cv-02398-DDD, 2020 WL 3097380, at *6 (D. Colo. June 11, 2020; ("It is certainly possible that this [Review Study] contains accurate information, but the ALJ was under no obligation to take administrative notice of it, whereas the ALJ did rely on the DOT and testimony of a vocational expert, both of which are considered reliable sources by governing regulations."); *Brandie K. A. v. Saul*, No. 19-01017-RAO, 2020 WL 2572461, at *4-5 (C.D. Cal. May 21, 2020); *Taylor v. Berryhill*, No. 1:17-cv-290, 2018 WL 2418560, at *3 (W.D.N.C May 29, 2018) ("The Court notes, however, precedent suggesting that the ALJ should have resolved the conflict between the [Review Study], since the job of addresser 'appears to be obsolete' and the information provided by the study thus 'reduces the reliability and credibility of the VE's testimony and casts further doubt on the ALJ's conclusion that jobs exist in significant numbers that the plaintiff can perform."); *Read v. Comm'r, Soc. Sec.*, No. GJH-15-2684, 2016 WL 2610117, at *4-5 (D. Md. May 6, 2016).

The Court also notes that, according to one district court case in this district, SSR 00-4p "only requires the ALJ to resolve apparent conflicts between the VE testimony and the DOT, and it does not additionally require resolution of a 'possible conflict' with the OOH." *Grimes v. Berryhill*, No. 3:16-CV-3280-BH, 2018 WL 1210533, at *11 (N.D. Tex. Mar. 8, 2018).

14

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 11, 2021,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED September 27, 2021.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE